IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

| | |
|---|---|
| ANDREW SMITH, | INDEX NO. 13cv2900(JPO) |
| | ECF CASE |
| Plaintiff, | |
| | JURY TRIAL DEMANDED |
| - against - | |
| | |
| THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-12", MAYOR MICHAEL R. BLOOMBERG, NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO, | COMPLAINT |
| Defendants. | |

----------------------------------------------------------------------X

Plaintiff ANDREW SMITH, by his attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully allege as follows:

## I. PRELMINARY STATEMENT

1. Plaintiff ANDREW SMITH ("Plaintiff") brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2. Plaintiff ANDREW SMITH was a member of the Occupy Wall Street ("O.W.S.") "Facilitation" working group, meaning that he moderated public O.W.S. meetings known as General Assemblies, within view of New York City Police Officers. The O.W.S. movement, *inter alia*, seeks to call attention to and change inequalities and ill effects created through corporate capture of governmental policymaking and enforcement.

3. On the afternoon of Saturday, September 24th, 2011, Plaintiff was present in the vicinity of Union Square as a participant in a march in furtherance of the O.W.S. movement.

4.  Following Plaintiff's participation in the march, the Defendants subjected numerous individuals to pre-planned, calculated, and illegal "trap-and-arrest" tactics, through which police officers effected mass arrests and detentions of of nearly one hundred (100) persons by extending orange netting across city blocks and arresting substantially all persons within their nets. Plaintiff was not caught in the orange netting.

5.  Instead, Plaintiff arrived at the scene after the mass arrest had been undertaken, joining a group of individuals on the sidewalk commenting on the mass arrest, chanting "let them go! Let them go!"

6.  Plaintiff ANDREW SMITH was then arrested by Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL and/or one or more Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES," and charged with allegedly inciting a riot by shouting "push past the cops!" to the mass arrestees within the police nets.

7.  Video evidence produced by Defendant CITY OF NEW YORK shows that Plaintiff ANDREW SMITH did not make any such statement, and all charges arising from this incident and false allegation against Plaintiff ANDREW SMITH have been dismissed.

8.  We respectfully submit that the arrest of Plaintiff ANDREW SMITH by Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL and/or one or more Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES was both the direct as well as an indirect result of policies and practices approved, condoned, and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG, Mayor of the City of New York, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, Commissioner of the New York City Police Department and Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO, Chief of the New York City Police Department, and that said policies were designed and intended to chill and deter expression of O.W.S. and O.W.S. participants by targeting individuals believed to be leaders of the O.W.S. movement for law enforcement action.

9.  Still further, we submit that Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, and Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO have approved, condoned, and ratified these targeted arrest tactics both directly as well as indirectly for the purposes of chilling individuals' First Amendment protected rights and retaliating against individuals for their legal exercise of the same.

10.  In sum, Plaintiff ANDREW SMITH brings this action in a quest for answers as to why he was retaliated against for his legal exercise of his First Amendment protected rights to free speech and association; subjected to targeted arrest

tactics; detained for overnight, brutalized, and subjected to prosecution in the absence of any criminal conduct or wrongdoing.

## II. JURISDICTION

11. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

12. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

13. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## IV. JURY DEMAND

14. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

15. Plaintiff ANDREW SMITH is an American citizen and a resident of the City of Belfast, County of Waldo, State of Maine.

16. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

17. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

18. That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

19. That at all times relevant to this action, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, either personally or through his employees, was acting under color of state law and/or in compliance with the

official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

20. That at all times hereinafter mentioned, the Defendant New York City Police Officers "John Does 1-12") (individually, "Defendant OFFICER JOHN DOE ___"; collectively, "Defendant "John Doe" POLICE OFFICERS"), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

21. That at all times relevant to this action, the Defendant "John Doe" POLICE OFFICERS, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

22. Defendant MAYOR MICHAEL R. BLOOMBERG is the Mayor of the City of New York City and the chief policymaker for the Defendant THE CITY OF NEW YORK and its department and agencies, including the New York City Police Department.

23. Defendant MAYOR MICHAEL R. BLOOMBERG has approved, condoned, and ratified the unconstitutional conduct challenged herein.

24. Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY is the Commissioner of the New York City Police Department, which is an agency of the Defendant THE CITY OF NEW YORK. Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY is a policymaker for the Defendant THE CITY OF NEW YORK and the New York City Police Department.

25. Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY has approved, condoned and ratified the unconstitutional conduct challenged herein.

26. Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO is the Chief of the Department for the New York City Police Department, which is an agency of the Defendant CITY OF NEW YORK. Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO is a policymaker for the Defendant CITY OF NEW YORK and the New York City Police Department.

27. Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO has approved, condoned and ratified the unconstitutional conduct challenged herein.

28. Each and all of the acts of Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA and the Defendant "John Doe" POLICE OFFICERS  (collectively, "individual Defendants") alleged herein were

4

done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

29.   Plaintiff ANDREW SMITH is a teacher, writer and non-profit/relief project coordinator who has given his time and services to post-Hurricane Katrina relief efforts, village rebuilding efforts following the 2006 tsunami in Thailand and Hurricane Sandy relief efforts here in New York City, among other works.

30.   In 2011, Plaintiff ANDREW SMITH became a member of the "facilitation" working group of Occupy Wall Street.

31.   On information and belief, at all times relevant herein O.W.S. conducted itself in accord with principles of "radical transparency," indicating complete openness of all administrative procedures to participation by any and all persons, and "horizontal organizing," indicating a non-hierarchical organizational structure, without any individuals having positions of authority or dominance over others.

32.   On information and belief, the "facilitation" working group of O.W.S. ("Facilitation") was comprised of individuals with leadership and organizational experience.  However, Facilitation members did not act as leaders; instead, members of Facilitation would organize and moderate meetings, such as O.W.S.' General Assemblies, without claiming any hierarchical or privileged position over any other participants in same.

33.   On information and belief, at all times relevant herein, officers and agents of Defendant CITY OF NEW YORK closely monitored the activities of O.W.S., including but not limited to O.W.S.' General Assemblies.

34.   On information and belief, in the first week of the occupation of Zuccotti Park by O.W.S., Plaintiff ANDREW SMITH moderated several General Assemblies and other meetings in public places in his capacity as a member of Facilitation.

35.   On information and belief, one or more New York City Police Department Officers monitored, surveilled, or otherwise observed one or more of these meetings moderated by Plaintiff ANDREW SMITH.

36.   On information and belief, officers and agents of Defendant CITY OF NEW YORK, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY, and/or Defendant MAYOR MICHAEL R. BLOOMBERG responsible for compiling and contextualizing information from surveillance of O.W.S. did not grasp that Facilitation members were not leaders of O.W.S. on or before September 24, 2011.

5

37. On information and belief, some or all of the Defendants herein incorrectly believed Plaintiff ANDREW SMITH to be a leader of O.W.S. at the time of the incident complained-of herein.

38. The events described herein took place on and after Saturday, September 24th, 2011.

39. On the afternoon of Saturday, September 24th, 2011, Plaintiff was present in lower Manhattan at the same time that a march in furtherance of the O.W.S. movement was occurring.

40. Plaintiff ANDREW SMITH had decided to participate in the march in order to further the O.W.S. movement by exercising his First Amendment protected rights to free speech and association.

41. Plaintiff ANDREW SMITH did not plan the march or lead the march.

42. While isolated arrests occurred at points along the march in question, the police and other authorities present did not attempt to stop the march.

43. No announcement was made by police or other authorities that the march was illegal or otherwise forbidden.

44. Police were present with the march for substantially all of its progress.

45. At or around 2pm, the march arrived at Union Square.

46. The events described hereinafter all occurred after 2pm, and after the conclusion of the O.W.S. march.

### ANDREW SMITH OBSERVES THE AFTERMATH OF NYPD "TRAP-AND-ARREST" TACTICS

47. As some of the march participants who had left Union Square by walking South along University Place approached East 12th Street, New York City Police Officers put up mesh barricades that blocked the march participants and others' access to University Place south of East 12th Street, and to East 12th Street east of University Place.

48. Plaintiff ANDREW SMITH was not present with those particular march participants and others.

49. The police officers' mesh barricades that blocked the march participants and others' access to University Place South of East 12 Street, and to East 12th Street east of University Place, in effect, forced the march participants and others to walk west along East 12th Street.

6

50. At or around this time, a number of march participants and others began walking west on East 12th Street.

51. Shortly after these march participants and others began walking west along East 12th Street, they approached the intersection of East 12th Street and 5th Avenue.

52. As these march participants and others approached the intersection of East 12th Street and 5th Avenue, New York City Police Officers put up mesh barricades that prevented the march participants and others from proceeding onto 5th Avenue.

53. At or around this time, the New York City Police Officers who had put up the mesh barricade along University Place south of East 12th Street moved said mesh barrier to prevent march participants and others from exiting East 12th Street back onto University Place.

54. The march participants and others were trapped by New York City Police Officers between University Place and 5th Avenue.

55. Some of the New York City Police Officers, mesh barricades in-hand, continued walking west along East 12th Street towards the march participants and others.

56. The New York City Police Officers' mesh barricades stretched across the entire width of East 12th Street, including both the north and south sidewalks of the same.

57. At or around this time, New York City Police Officers undertook a mass arrest of individuals, including march participants and others, within the police mesh barricades on East 12th Street.

58. As this was occurring, Plaintiff ANDREW SMITH arrived at the corner of 5th Avenue and East 12th Street, and joined numerous other individuals present outside of the mesh barricades, observing the mass arrest in progress.

59. Plaintiff ANDREW SMITH was standing on the sidewalk observing the mass arrest.

60. Plaintiff ANDREW SMITH joined with others present in chanting "let them go! Let them go!" to the police officers conducting a mass arrest within the barricades.

61. Plaintiff ANDREW SMITH raised both his hands above his head, with his hands flat, and moved them in a controlled fashion to emphasize his statement.

62. Plaintiff ANDREW SMITH did not ball his hands into fists or engage in any other threatening, violent or tumultuous behavior.

7

**63.** The NYPD patrol guide, at PG 208-03, section "observers at the scene of police incidents," clearly states that speech in the vicinity of a stop and arrest, and remaining in the vicinity of a stop and arrest do not provide probable cause to arrest that onlooker.

**64.** Nevertheless, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL arrested Plaintiff ANDREW SMITH.

**65.** Nevertheless, one or more of the Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES" arrested Plaintiff ANDREW SMITH.

**66.** Plaintiff ANDREW SMITH was handcuffed.

**67.** Plaintiff ANDREW SMITH was taken to a police station where he was photographed and fingerprinted.

**68.** Plaintiff ANDREW SMITH was held overnight and arraigned the following day on the sole charge of Inciting to Riot, a Class A Misdemeanor.

## CHARGES AGAINST ANDREW SMITH MULTIPLY BASED ON DEMONSTRABLY FALSE NEW POLICE ALLEGATIONS HALF A YEAR LATER, THEN ARE DISMISSED

**69.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL falsely averred in a criminal complaint dated September 24, 2011 that Plaintiff ANDREW SMITH chanted "push past the cops, push past the cops," and motioned for arrestees to move towards him.

**70.** On information and belief, video evidence produced by TARU shows that Mr. Smith was chanting "let them go, let them go," along with a number of other persons.

**71.** On information and belief, no other persons who where present and chanting "let them go, let them go," or anything else, were arrested for that conduct.

**72.** Plaintiff ANDREW SMITH appeared for court to defend against this spurious charge on multiple occasions thereafter.

**73.** On March 23, 2012, over six (6) months after the incident, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL swore out another criminal complaint against Plaintiff ANDREW SMITH, additionally charging him with Unlawful Assembly, a Class B Misdemeanor, and three counts of Disorderly Conduct, a violation and not a crime, falsely claiming that Plaintiff ANDREW SMITH and others "prevent[ed] pedestrians from walking down said crosswalk."

**74.** On information and belief, video evidence produced by TARU shows that Mr. Smith was not obstructing the crosswalk.

**75.** NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL additionally falsely claimed that Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO ordered Plaintiff ANDREW SMITH "to disperse and cease shouting at the crowd to push past the police[,]" and that Plaintiff ANDREW SMITH refused to comply.

**76.** On information and belief, video evidence produced by TARU shows Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO was not present and issued no orders to Plaintiff ANDREW SMITH.

**77.** Thereafter, Plaintiff ANDREW SMITH accepted an adjournment in contemplation of dismissal of the five (5) charges against him.

**78.** All charges against Plaintiff ANDREW SMITH have since been dismissed and sealed.

**79.** Upon information and belief, Defendant CITY OF NEW YORK, Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO have adopted non-content neutral practices and customs with respect to law enforcement around First Amendment expressive activities that deliberately target supposed leaders of said activities on the basis of content.

**80.** Upon information and belief, the policies and practices of Defendant CITY OF NEW YORK, as effected and/or condoned Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and their agents with respect First Amendment have created and continue to foster a sense of confusion for individuals seeking to engage in First Amendment expressive activities in New York City, because it is unclear what forms of public assembly are proscribed and what forms of public assembly are allowed to proceed.

**81.** Upon information and belief, this sense of confusion is further fostered due to the repeated instances of agents of Defendant CITY OF NEW YORK levying demonstrably false charges against supposed leaders of particular expressive activities.

**82.** Upon information and belief, instead of creating and subsequently enforcing content neutral policies and practices that delineate the circumstances under which persons can peaceably assemble without threat of arrest by officers and agents of Defendant CITY OF NEW YORK, Defendants have relied upon vague and inconsistently applied customs and practices for policing First Amendment expressive activities.

**83.** These customs and practices embrace and enable mass arrest tactics such as deployed by Defendants against nearly one hundred people on the

9

afternoon of September 24th, 2011, and over seven hundred people one week later, on October 1, 2011.

84.   These customs and practices embrace and enable disproportionate and unjustified arrests and "piling on" of charges, such as deployed by Defendants against Plaintiff ANDREW SMITH, in efforts to deter such supposed leaders of expressive activities from exercising their first amendment rights.

85.   Another example of these customs and practices was set forth in October of 2004, when NYPD Officers who had erroneously become convinced that the environmental advocacy non-profit group "Time's Up" was somehow orchestrating the global, leaderless monthly "Critical Mass" bicycle rides, attempted to infiltrate "Time's Up's" Halloween fundraiser party, then initiated a "level one mobilization," deploying ten (10) or more police vehicles and surrounding the party for well over an hour, without apparent justification.  See Alford et al. v. City of New York et al., SDNY 06-CV-2512 (PAC).

86.   That these customs and practices continued past the arrest of Plaintiff ANDREW SMITH complained-of herein can be shown with reference to the arrest of O.W.S. Finance Working Group member Peter Dutro, who on November 17, 2011 was pulled out of a bank branch and arrested by several police officers, who falsely averred that Mr. Dutro was obstructing pedestrian traffic at an outdoor location nearby.  The charges preferred against Mr. Dutro were dismissed by the Manhattan District Attorney when video surveillance footage showing that Mr. Dutro was inside a bank and not obstructing pedestrian traffic in any way was produced by the bank.  See Rodriguez et al. v. Winski et al., SDNY 12-CV-3389 (NRB).

87.   That these customs and practices continued past the arrest of Plaintiff ANDREW SMITH complained-of herein can be shown with reference to the arrest of O.W.S. participant Justin Wedes, who appeared on the national television show "The Colbert Report," on behalf of O.W.S., who on January 17, 2012 was singled out and tackled by First Precinct Commanding Officer Deputy Inspector Edward Winski while passively recording police interactions in a public atrium, and was charged with criminal trespass and resisting arrest, despite video showing that he was lawfully present in a public place and did not resist arrest.  Justin Wedes was held for over forty (40) hours before being arraigned on these charges, which were later dismissed and sealed. See Rodriguez et al. v. Winski et al., SDNY 12-CV-3389 (NRB).

88.   Upon information and belief, Defendants have relied upon content-based tactics such as deployed on Plaintiff ANDREW SMITH because such tactics areuseful for effectively chilling individuals' and groups' First Amendment protected rights to free speech and association than the Constitutionally-required tactic of developing individualized probable cause to effect specific arrests of individuals who have actually committed crimes and violations.

10

89. Upon information and belief, the Defendants' probable-cause-less arrest and overnight detainment of Plaintiff was a direct result of pre-planned and calculated decisions by Defendant MAYOR MICHAEL R. BLOOMBERG and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO intended to chill Plaintiff's and others' First Amendment protected rights to free speech and association.

90. Upon information and belief, the Defendants' probable-cause-less arrest and overnight detainment of Plaintiff was an indirect result of policies and practices both approved and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG as well as supported and carried out by Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO to effectively chill and suppress Plaintiff's and generally all individuals' exercise of their First Amendment protected rights to free speech and association.

91. At the time of the September 24th, 2011 incident and arrest of Plaintiff ANDREW SMITH, he did not have a warrant out for his arrest.

92. At the time of the September 24th, 2011 incident and arrest of Plaintiff ANDREW SMITH, he was not in possession of a weapon of any sort.

93. At the time of the September 24th, 2011 incident and arrest of Plaintiff ANDREW SMITH, he was not in possession of a controlled substance of any sort.

94. At the time of the September 24th, 2011 incident and arrest of Plaintiff ANDREW SMITH, he was not engaged in any illegal activity of any kind, but instead was lawfully exercising his First Amendment Protected rights to free speech and association.

95. As a result of the foregoing, Plaintiff ANDREW SMITH sustained, inter alia, mental injuries, emotional distress, embarrassment, temporary deprivation of property, humiliation, and deprivation of their constitutional rights.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

96. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

97. All of the aforementioned acts of the Defendant CITY, and the individual Defendants and their agents, servants and employees, were carried out under

the color of state law.

98. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

99. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

100. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

101. The individual Defendants, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

102. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standing within his communities.

103. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### SECOND CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983
_____

104. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

105. Plaintiff was arrested in the absence of probable cause, at the direction of, or under practices, policies or customs promulgated by, Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO.

106. As a result of the aforesaid conduct by Defendants, Plaintiff was subjected to illegal, improper and false arrests by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable

cause, privilege or consent.

**107.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standing within his communities.

**108.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983

**109.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**110.** Plaintiff was unnecessarily handcuffed for extended periods of time by NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL and/or one or more of the Defendant POLICE OFFICERS.

**111.** The circumstances presented to NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL and the Defendant POLICE OFFICERS at that time did not support any of the above applications of force on Plaintiff.

**112.** Plaintiff was subjected to excessive force and were assaulted by the NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL and/or Defendant POLICE OFFICERS, in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

**113.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standing within his communities.

**114.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

**115.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**116.** The Defendant POLICE OFFICERS, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, Defendant NEW YORK CITY

POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY had an affirmative duty to intervene on the Plaintiff's behalf to prevent the violation of his constitutional rights.

**117.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

**118.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the Plaintiff's rights were violated by their affirmative conduct.

**119.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite their awareness that their rights were being violated.

**120.** As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

**121.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standing within his communities.

**122.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### <u>RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION</u>
### UNDER 42 U.S.C. § 1983

**123.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**124.** At or around the times that Plaintiff came into contact with Defendant

14

NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS, Plaintiff was or had recently been engaging in protected speech and conduct, including but not limited to

  (a) peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues;

  (b) commenting on police conduct in the course of arrests and police use of force in the course of arrests;

  (c) walking and being present in proximity with persons peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues; and

  (d) appearing and acting in what was, on information and belief, perceived by Defendants to be a leadership position vis-à-vis O.W.S..

**125.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action and condoned adverse action against Plaintiff for engaging in such protected speech and conduct.

**126.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL A, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse actions against Plaintiff by using and condoning the use of wrongful and unjustified force upon Plaintiff.

**127.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action and condoned adverse action against Plaintiff by unlawfully arresting him without probable cause.

**128.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL took adverse action against Plaintiff by falsely accusing him of crimes and violations.

**129.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action and condoned adverse action against Plaintiff by taking Plaintiff into Police custody and detaining him against his will.

**130.** There was a causal connection between the protected speech and conduct engaged in by Plaintiff and persons in proximity to Plaintiff and the adverse actions taken by Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE

OFFICERS.

**131.** The causal connection between the protected speech and conduct engaged in by Plaintiff and those in proximity to Plaintiff and the adverse actions taken against Plaintiff by Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS was demonstrated by, among other things, the particular targeting of Plaintiff ANDREW SMITH among a group of others engaged in the same conduct, *inter alia*, commenting on a mass arrest in progress..

**132.** The causal connection between the protected speech and conduct engaged in by Plaintiff and the adverse actions taken against Plaintiff by Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS was demonstrated by, among other things, the absence of probable cause justifying Plaintiff's arrest.

**133.** Plaintiff was falsely accused of crimes and violations and were taken into Police custody and detained against his will.

**134.** That following his arrest, Plaintiff was subjected to prosecution for various crimes and violations.

**135.** The above-described charges were pretexts intended to justify the illegal arrest of Plaintiff.

**136.** The actions of Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**137.** That the conduct and actions of Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS acting under color of State law, in assaulting, detaining and imprisoning the Plaintiff were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily

harm, pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**138.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS deprived Plaintiff of his liberty in violation of both his civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York, or for his proximity to those exercising said rights.

**139.** Defendant NEW YORK CITY POLICE DETECTIVE KENNETH O'DONNELL, DEFENDANT NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

**140.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standing within his communities.

**141.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
### UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983
_____

**142.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**143.** Plaintiff also incorporates herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**144.** Defendants arrested and incarcerated Plaintiff in the absence of any

17


evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests and incarcerations would jeopardize the Plaintiff's liberty, wellbeing, safety, and constitutional rights.

**145.** The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**146.** The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

**147.** The aforementioned customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals engaged in first amendment protected expression without probable cause due to perceived lack of respect for the police officer through the content of their messaging (i.e., "contempt of cop" arrests of persons engaged in first amendment protected expression);

b) wrongfully arresting individuals engaged in first amendment protected expression without probable cause in attempts to justify excessive uses of force against same, both sui generis and to retaliate against the individuals for the content of their first amendment protected expression (i.e. "contempt of cop" "cover charge" arrests; condoning brutality);

e) the pervasive failure to supervise, train, instruct and discipline police officers with respect to the constitutional rights of citizens, and encouraging the ensuing misconduct through condoning officers' widespread custom or practice known as the "Blue Wall of Silence," wherein officers deliberately frustrate official and departmental oversight by discouraging officers from reporting corrupt or unlawful acts of other police officers, and by retaliating against officers who report police misconduct (condoning pervasive constitutional violations and concomitant "Blue Wall of Silence" coverups of same)

f) wrongfully arresting persons observing, documenting, or commenting upon police actions in violation of the consent decree in *Black et al. v. Codd et al.*, United States District Court, Southern District of New York, 73 Civ. 5283 ("Consent Decree").

**148.** The Consent Decree states at 2 that: "[n]one of the following constitutes probable cause for the arrest or detention of an onlooker [to a police action] unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated: (a) Speech alone, even though crude and vulgar; (b) Requesting and making notes of shield numbers and names of officers; (c) Taking photographs; (d) Remaining

in the vicinity of the stop or arrest."

149. This understanding memorialized in the Consent Decree is codified in the NYPD Patrol Guide at PG §208-03, subsection "Observers At The Scene of Police Incidents."

150. Despite due and repeated notice of the First Amendment rights of citizens in the vicinity of police actions, those same rights have been disregarded flagrantly and repeatedly throughout the course of Occupy Wall Street by members and ranking officers of the NYPD alike.

151. Officers of the NYPD took adverse action against the aforesaid Plaintiff and other persons similarly situated in deliberate efforts to chill the First Amendment protected expression of persons observing, recording, and/or commenting upon police actions undertaken in the course of Occupy Wall Street.

152. The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and Defendant CITY OF NEW YORK, including, without limitation, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY and Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO.

153. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of Defendant CITY OF NEW YORK, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and IAB, and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

154. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual defendants, Plaintiff's constitutional rights were violated.

155. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages,

and damage to his reputation and standing within his communities.

**156.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

    [a] Invoke pendent party and pendent claim jurisdiction.

    [b] Award appropriate compensatory and punitive damages.

    [c] Award appropriate declaratory and injunctive relief.

    [d] Empanel a jury.

    [e] Award attorney's fees and costs.

    [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
               April 30, 2013

                        Respectfully submitted,

                        ~//s//~
                        SAMUEL B. COHEN [SC 0622]
                        STECKLOW COHEN & THOMPSON
                        10 SPRING STREET – SUITE 1
                        New York, New York 10012
                        [212] 566-8000
                        [212] 202-4952/FAX
                        SAM@WYLIELAW.COM
                        ATTORNEYS FOR PLAINTIFF